## APPEAL OF MINDEN LUMBER CO.

Docket No. 1515.   Submitted April 8, 1925.   Decided June 30, 1925.

An exchange in 1910 of an interest in timberlands acquired during the same year for interests in other timberlands of undetermined stumpage and value does not necessarily make it impossible for the Commissioner satisfactorily to determine the taxpayer's invested capital for 1917 nor require assessment of profits tax under section 210 of the Revenue Act of 1917.

*Mark Eisner, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and SMITH.

This appeal is from the Commissioner's determination of a deficiency in income and profits taxes for the year 1917, in the amount of $23,945.53. The taxpayer claims that its income and profits taxes for the year in question should be computed under the provisions of section 210 of the Revenue Act of 1917. At the hearing the Commissioner moved to dismiss on the ground that the Board has no jurisdiction when notice of a deficiency and an overassessment in excess of such alleged deficiency are included in the same sixty-day letter to a taxpayer. From the oral and documentary evidence, and the admitted allegations of the petition, the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a Louisiana corporation with its principal offices at Minden, La. It is the owner of timberlands and is engaged in the business of logging and manufacturing lumber.

2. On January 1, 1906, the taxpayer purchased 12,500 acres of timberland, and, in addition, the timber rights on 440 acres of land, not acquired in fee, from the Duncan & Brewer Lumber Co. for a consideration of $480,000, paid in cash and in the notes of the company. Subsequently, on February 2, 1910, the taxpayer purchased a two-fifths interest in 11,312.12 acres of timberland from the Winn Land & Lumber Co. for a consideration of $220,171.40, and paid its notes therefor in the amounts of. $73,140.41, $73,500, and $73,500, due in one, two, and three years, respectively, from the date of the transaction. All the notes involved in these two purchases of timberlands were paid prior to the year 1917.

3. On September 28, 1910, the taxpayer sold to the Bodcaw Lumber Co. an undivided two-fifths interest in 15,064.21 acres of timberland situated in Winn Parish and its timber rights in 40 acres of timberland. The consideration for such sale was a deed of even date by which the Bodcaw Lumber Co. conveyed to the taxpayer 3,506.06 acres of timberland in fee; an undivided three-fifths interest in 4,220.41 acres of timberland, and the timber rights in 1,870 acres of timberland. By this transaction the taxpayer secured all the standing timber on 5,376.06 acres of timberland and an undivided three-fifths interest in 4,220.41 acres of timberland in exchange for all the standing timber on an undivided two-fifths of 15,064.21 acres of timberland.

4. The transaction described in paragraph three, above, was without any money consideration, and was entered into solely for the purpose of blocking the timberlands of the taxpayer so that the logging and other operations might be carried on at lower cost. By this exchange timberlands and timber rights, all of which had previously been purchased for a stated consideration in dollars, were exchanged for similar lands and rights more conveniently located for the operations of the taxpayer.

5. None of the timberlands acquired by the taxpayer from the Winn Land & Lumber Co. and the Duncan & Brewer Lumber Co. for cash, or from the Bodcaw Lumber Co., by exchange, has ever been cruised nor has the standing timber thereon been accurately estimated. In computing the invested capital of the taxpayer for excess-profits-tax purposes for 1917, the Commissioner arbitrarily placed a value of $3.05 per thousand feet on the estimated amount of uncut timber on the taxpayer's property on March 1, 1913. In arriving at such estimate, the Commissioner made no survey of the lands conducted by competent timber cruisers, nor did he take into consideration the value of the cut-over lands from which the taxpayer had removed all timber prior to that date.

6. The taxpayer; the Bodcaw Lumber Co., Stamps, Ark.; the Good Pine Lumber Co., Good Pine, La.; the Grant Timber & Manufacturing Co., Selma, La.; the Tall Timber Lumber Co., Good Pine, La.; the Trout Creek Lumber Co., Trout, La.; and the Louisiana & Arkansas Railroad, all are controlled and operated by the same interests, and are known as the Buchanan properties. The taxpayer and the related corporations, comprising the so-called Buchanan interests, are all engaged in the same business; that is, in buying and selling, owning and logging from timberlands, in manufacturing lumber, and in selling lumber. The lands are similarly situated along the lines of the Louisiana & Arkansas Railroad, which is owned and controlled by the same interests. The standing timber

on all the lands is of the same variety, which is known to the lumber trade as long leaf Louisiana pine. The topographical features of the lands, the distance over which logs are transported to the mills, and all other conditions governing all the operations of each of the companies are substantially similar.

7. The property of the taxpayer consists of timberlands partly cut over, but with a large amount of timber still standing, of a lumber manufacturing plant, which includes all the usual facilities for the conversion of logs into finished and seasoned lumber ready for the market, and of all the necessary equipment for logging and transporting logs to the mill. The taxpayer has never had its standing timber cruised and estimated to ascertain value as of 1913 or of any other date, nor has it used any uniform depletion rate for the recovery of its capital resulting from the removal of standing timber.

8. Upon auditing the income and excess-profits-tax returns of the taxpayer for the year 1917 the Commissioner found that the invested capital for that year was $1,023,306.84; that the net income was $296,092.29; and that the tax liability of the taxpayer for the year was $74,634.02. This audit disclosed an alleged deficiency of $23,945.53, of which notice was mailed to the taxpayer on November 19, 1924. From the deficiency so determined, the taxpayer takes this appeal.

9. To support its claim for the computation of its income and excess-profits tax for 1917, under the provisions of section 210 of the Revenue Act of 1917, the taxpayer cites the following facts, disclosed by the income and excess-profits-tax returns of the five companies, which it regards as proper comparatives to be used by the Commissioner in determining its tax liability for the years in question:

| Company. | Invested capital. | Gross income. | Net profits. | Profits-tax credit. | Profits tax. |
|---|---|---|---|---|---|
| Bodcaw Lumber Co | $3,183,699.19 | $1,221,298.67 | $403,400.54 | $389,532.93 | |
| Good Pine Lumber Co | | 551,789.38 | 195,785.38 | | $5,315.73 |
| Grant Timber & Mfg. Co | 2,440,255.90 | 739,259.28 | 245,961.88 | 222,623.03 | 4,667.77 |
| Tall Timber Lumber Co | 1,346,578.96 | 588,623.34 | 169,607.85 | 124,192.11 | 9,083.15 |
| Trout Creek Lumber Co | 1,774,470.69 | 661,105.87 | 269,508.27 | 160,003.36 | 22,773.52 |

None of the companies asked for the computation of its income and excess-profits taxes for the year 1917 under the provisions of section 210 of the Revenue Act of 1917, and only one of them has protested against or appealed from the final determination of its tax liability by the Commissioner.

10. It was the practice of Buchanan and his associates to draw practically no salary for services as executive officers. The maximum salary paid any officer of the taxpayer or of the companies cited as comparatives was about $10,000 per year. Buchanan never made any charge for his services to any of the companies.

DECISION.

The determination of the Commissioner is approved.

OPINION.

LANSDON : In this appeal two questions are presented for the consideration of the Board : (1) The Commissioner has moved to dismiss the appeal on the ground that he has not, since June 2, 1924, asserted any deficiency in tax of this taxpayer within the meaning of section 274 (a) of the Revenue Act of 1924; and (2) if the motion of the Commissioner is denied, whether this taxpayer is entitled to have its income and profits-tax liability for the year 1917 determined under the provisions of section 210 of the Revenue Act of 1917.

In support of his motion to dismiss, the Commissioner urges that the letter in which a deficiency of $23,945.53 in tax for 1917 is asserted, and which also contains notice of an overassessment of $30,924.41 for 1918, does not, as a matter of fact and of law, constitute a deficiency letter within the meaning of section 274 (a) of the Revenue Act of 1924, and, therefore, the Board is without jurisdiction to hear and determine the issues raised by the taxpayer in its petition. For answer to the motion to dismiss the taxpayer contends that it takes its appeal solely from the determination of the Commissioner of a deficiency of $23,945.53 for the year 1917, and that it should not be deprived of its right to have such appeal heard and decided by the Board by reason of an overassessment for the following year; that it is appealing from the deficiency asserted for 1917, and not from the overassessment conceded for 1918, even though notices of both the deficiency and overassessment were included in the same letter, and notwithstanding the fact that the overassessment is greater in amount than the asserted deficiency.

The effect of granting the motion to dismiss would be to clothe the Commissioner with large discretionary powers, which would enable him to deprive many taxpayers of the relief provided in section 274 (a) of the Revenue Act of 1924. By including deficiency and overassessment notices in the same letter, the Commissioner could prevent any taxpayer from appealing from any deficiency exceeded in amount by notice of an overassessment included in the same letter without any regard whatever to the errors of the Commissioner in determining the deficiency.

For the reasons herein stated, and also on authority of the *Appeal of E. J. Barry*, 1 B. T. A. 156; *Appeal of Hickory Spinning Co.*, 1 B. T. A. 409; and *Appeal of Tel-Electric Co.*, 1 B. T. A. 434, the Commissioner's motion to dismiss is denied.

In support of its contention that its tax liability for the year in question should be computed under the provisions of section 210 of the Revenue Act of 1917, the taxpayer pleads that its conditions are abnormal, because it paid only nominal salaries to its officers, and its invested capital can not be ascertained with any reasonable degree of accuracy. The unknown quantities in the problems of computing the invested capital of the appellant are (1) the value of timberland and timber rights acquired by the exchange with the Bodcaw Lumber Co., and (2) the value, if any, of the cut-over lands owned by the taxpayer.

The timberlands and timber rights originally owned by the taxpayer were acquired by purchase for a cash consideration of $700,171.40. Subsequently large capital expenditures were made for sawmills, planing mills, logging equipment, and other facilities for use in business operations. All such additions were capital investments, which were definite in amount and of record on the taxpayer's books of account.

In the exchange of lands and timber rights with the Bodcaw Lumber Co. the taxpayer alleges that it received 1,882.62 acres more of timberlands and timber rights than it relinquished and in this appeal maintains that the value of such land can not be ascertained for invested-capital purposes. The evidence in support of this contention is not persuasive. There are undivided interests both in the lands relinquished and in the lands received. It is impossible, therefore, to reduce the results of such an exchange to definite figures representing any specific number of acres of timberlands or rights in standing timber. The taxpayer and the Bodcaw Lumber Co. are separate operating units of the Buchanan interests. It is a reasonable presumption that the properties exchanged were of approximately equal value, and it is in evidence that the reason for the exchange was not in the value of the properties, but in the greater ease, efficiency, and economy of operation that resulted. It was not additional property values but convenience and advantages in logging and other operations that were acquired.

The taxpayer offers no convincing evidence that the value of its standing timber is greater than the amounts ascertained by the Commissioner. It admits that no survey of its standing timber has ever been made by a competent timber cruiser, and that it has followed no uniform rule in taking credit for depletion of its stumpage, either in its own accounting or for the purpose of determining its invested capital for income and profits-tax purposes. It is, therefore, without data to prove its allegation that the Commissioner is in error in his computation of its invested capital in respect to the value of its timberlands and timber rights. At the hearing some-

thing was said about the values of cut-over lands omitted or disregarded in the Commissioner's estimate of invested capital. The record does not disclose the values set up for such lands on the books of the taxpayer or that it, in fact, now owns any cut-over acreage.

The companies cited by the taxpayer as comparatives that should be used by the Commissioner in computing the tax liability of the appellant under the provisions of section 210 of the Revenue Act of 1917 are engaged in similar operations in substantially similar conditions. The invested capital, gross and net incomes, the profits-tax credit and the profits tax paid of such companies, as far as they are disclosed by the evidence, are set forth in the findings of fact, but the Board does not believe that such facts, considered in connection with the other evidence offered at the hearing, prove that the Commissioner erred in refusing to compute the excess-profits-tax liability of the taxpayer for 1917 under the provisions of section 210 of the Revenue Act of 1917.

The evidence as to abnormally low salaries is so vague and indefinite that the Board is unable to give it any weight in determining the issues of this appeal. .

In the light of all the evidence adduced, the Board discovers no abnormalities in connection with the taxpayer's invested capital or operations that justify a computation of its tax liability under the provisions of section 210 of the Revenue Act of 1917.